UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                                                              Case No. 25-CR-0086 (GTS)

    v.

FACUNDO CARMENLINO PEREZ VASQUEZ,

           Defendant.
_____

**MEMORANDUM OF LAW IN RESPONSE
TO THE GOVERNMENT'S APPEAL OF
THE MAGISTRATE JUDGE'S RELEASE ORDER**

DATED:    March 28, 2025           Respectfully submitted,
               Syracuse, New York

                                        LISA A. PEEBLES
                                        Federal Public Defender

                           By:    Anne L. LaFex
                                        Assistant Federal Public Defender
                                        4 Clinton Square, 3rd Floor
                                        Syracuse, New York 13202
                                        (315) 701-0080

The defendant, Facundo Carmenlino Perez Vasquez, was arrested by law enforcement on March 3, 2025, and charged by complaint with illegal reentry under 8 U.S.C. § 1326. The next day, Mr. Perez Vasquez appeared before Magistrate Judge Miroslav Lovric for an initial proceeding. Judge Lovric denied the government's requests for detention and to hold a detention hearing. The government has now appealed Judge Lovric's release order. For the reasons set forth below, the Court should dismiss the appeal, affirm Judge Lovric's decision, and direct the United States Marshals to release Mr. Perez Vasquez.

I.  BACKGROUND

A.  The Criminal Complaint

On March 3, 2025, the vehicle that Mr. Perez Vasquez was driving was stopped by the Oswego Sheriff's Office on State Route 3 in Fulton, New York. After Mr. Perez Vasquez provided the deputy with a suspended driver's license, the deputy summoned United States Border Patrol. When Border Patrol arrived at the scene, Mr. Perez Vasquez allegedly told the officer he had no lawful immigration status in the United States. Border Patrol then arrested and transported him to the Oswego Border Patrol Station. There, a records check revealed that Mr. Perez Vasquez was removed from the United States twice before, once in 2004 and once in 2008.

B.  The Initial Appearance and the Magistrate Judge's Decision

After Mr. Perez Vasquez was arrested pursuant to a complaint charging him with illegal reentry under 8 U.S.C. § 1326, Magistrate Judge Lovric conducted an initial appearance by video conferencing, with an interpreter present, on March 4, 2025. The government's attorney, Assistant United States Attorney Justin Bennett, requested the defendant be detained pursuant to 18 U.S.C. § 3142(f)(2)(A) as follows:

> As to the information that the government currently possesses to warrant a detention hearing: First, are the nature and circumstances

>of the offense, which are reflected in the complaint. The second is the weight of the evidence against the defendant, which the government submits is strong. And it is strong based on the anticipated testimony of both the Border Patrol agent, as well as the defendant's own statements. Third, regarding the characteristics of the defendant, the defendant is a Guatemalan citizen with no known ties to the United States. The defendant has demonstrated a persistent lack of respect for our immigration laws, as well as great facility with entering the United States illegally. As reflected in the complaint, according to record checks, the defendant has been removed from the United States on multiple prior occasions, including on February 11, 2004, and December 4, 2008. And I would proffer to the Court -- this is not in the complaint -- we don't have full information on it yet, however, I've shared in discovery – I'll pause. That in conjunction with the 2008 removal, there apparently was a charge of, quote, 'fraud and related activity in connection with ID documents.' I don't have more information than that for the Court at this time about what the alleged fraud was or what the ID documents were, but it was in conjunction with the 2008 removal. There is also an immigration detainer in this case. As reflected in the letter that we submitted, the government believes the Court can appropriately consider the nature of the offense, the existence of an immigration detainer, the fear of imprisonment and deportation, all as relevant factors pertaining to the risk of flight. And taken together, this is more than sufficient to justify a detention hearing, your Honor.

Dkt. No. 10 at 9-11.

Towards the end of the government's presentation as detailed above, the interpreter observed that Mr. Perez Vasquez had begun to cry. Dkt. No. 10 at 11. The interpreter unilaterally interrupted the Court to put her observation on the record, and Mr. Perez Vasquez responded, "I'm listening what is being mentioned today in relation to my detention hearing and apparently I'm going to be deported, correct?" *Id.* By the time Mr. Perez Vasquez had started speaking, however, he had stopped crying, and he did not show any further emotions during the proceeding.[1]

---

[1] The defendant did not "burst into tears," as described by the government. Dkt. No. 3-1 at 14. The defense objects to this exaggerated description as unfairly describing the moment and inaccurately suggesting Mr. Perez Vasquez became a spectacle.

Judge Lovric then asked AUSA Bennett how "the immigration detainer . . . shed[s] light on whether or not Mr. Perez would be a serious risk to flee." *Id.* at 11. In response, AUSA Bennett argued that the detainer speaks to a defendant's risk of flight because it generates a "fear [in the defendant] of being picked up and removed pursuant to that detainer" and therefore it could be "an additional motivating factor to flee." *Id.* The government nevertheless acknowledged that, if Mr. Perez Vasquez was released from the United States Marshal's custody, the immigration detainer could lead to Mr. Perez Vasquez's detention by immigration authorities and subsequent deportation. *Id.* at 13. AUSA Bennett admitted that such result "would be an involuntary reason for not appearing at future court dates, and, as such, should not be considered on this issue of a risk of voluntary flight." *Id.*

Judge Lovric then elicited further information concerning the "fraud" activity to which AUSA Bennett had alluded. Dkt. No. 10 at 14. AUSA Bennett explained that (1) he did not "know what specific fraud was alleged or what ID documents were involved"; (2) his own personal inference was that Mr. Perez Vasquez "was in possession" of fraudulent documents (as opposed to producing them); and (3) "the limited information that [the government had] at the moment . . . at least indicates . . . a willingness by the defendant to utilize fraudulent identity documents, presumably to avoid detection with regard to his immigration status." *Id.* at 15-16.

In response to the government's arguments, defense counsel emphasized that, based on Second Circuit precedent, the court could not rely on the charged offense when determining whether the case involves a serious risk of flight. Dkt. No. 10 at 17. Furthermore, the defense noted that there was nothing about the circumstances of the offense that lend itself to a conclusion that the defendant is a serious risk of flight, including the fact that Mr. Perez Vasquez was cooperative during the stop and with agents afterwards. *Id.* The defense noted, again based on circuit precedent,

4

that what happens to the defendant because of an immigration detainer is not in his control, and therefore, does not speak to risk of flight. *Id.* Counsel then emphasized that the government's "fear" argument related to the detainer is purely speculative and, in any event, the government presented "no evidence that [the defendant] would flee voluntarily . . . based on any fear he does have." *Id.* In response to the government's contention that Mr. Perez Vasquez's tears earlier in the proceeding reflected "fear" of being deported, defense counsel offered a different interpretation – the tears reflected sadness and surprise, rather than fear. Defense counsel further observed that whatever emotion was displayed did not support the government's speculative contention that the emotion would further manifest in intentional flight from prosecution. Defense counsel then noted that Mr. Perez Vasquez has ties to the community, including his residency in Fulton, New York, since arriving back in the United States, the fact that he has two children under the age of 18 in his care, and his employment in Fulton. *Id.* at 18. Finally, the defense reiterated that the information before the Court about the fraud charge from almost two decades ago was incomplete; Mr. Perez Vasquez did not have any fraudulent documents in his possession when he was arrested on March 3, 2025; and any conclusions about the 2008 fraud incident would be purely speculative given the limited information the government had about it. *Id.*

At the conclusion of counsel's arguments, Magistrate Judge Lovric decided that the government had failed to meet its burden to detain the defendant. The Court relied on *United States v. Terrance*, No. 24-CR-0456 (MAD), Dkt. No. 8 (N.D.N.Y.), and also made the following findings of fact:

> At its best, the case before me is that Mr. Perez is in this country illegally, that he has previously been removed from this country, and that he has subsequently reentered the United States, and that the case and the evidence against him is strong given that he has allegedly -- given that he has allegedly confessed to these activities. But beyond that,

5

>there's nothing further that addresses the issue at hand, which is whether or not he is a serious risk to flee if released. And, in essence, if that were the standard then, every illegal reentry case would result in a detention hearing and potentially a detention order, but the statute does not say that.

Dkt. No. 10 at 21-23.

### III. APPLICABLE LEGAL STANDARDS

#### A. The Bail Reform Act

The Bail Reform Act authorizes and establishes the procedures for release or detention of a defendant pending trial, sentence, and appeal. *See* 18 U.S.C. §§ 3141, *et seq.* The procedures and standards for release or detention specifically pending trial are set forth in 18 U.S.C. § 3142. "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

Where, like in this case, the government requests the detention of a defendant and a detention hearing under § 3142, the government must first establish by a preponderance of the evidence that it is entitled to a detention hearing. *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) (citing *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988)). Under § 3142(f), the government is entitled to a detention hearing under the following circumstances: (1) if the charged offense falls into one of the five subcategories set forth in § 3142(f)(1)(A)-(E); (2) if the case involves a serious risk that the defendant will flee; or (3) if the case involves a serious risk that the defendant will (or will attempt to) obstruct justice or intimidate a prospective witness or juror. *See* 18 U.S.C. § 3142(f); *Watkins*, 940 F.3d at 158. Once the government establishes by a preponderance of the evidence that it is entitled to a detention hearing, the Court must promptly hold a hearing. *Id.*

In this case, the government sought the detention of the defendant and a detention hearing pursuant to § 3142(f)(2)(A), arguing the case involves a serious risk that the defendant will flee. Dkt. No. 10 at 8. "Serious risk" has been consistently defined by courts as constituting "a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *See, e.g., United States v. Romero-Martinez*, 2024 WL 965150, at *4 (D. Conn. Mar. 6, 2024) (citing *United States v. Figueroa-Alvarez*, 2023 WL 4485312, at *5 (D. Idaho 2023)); *see also United States v. Martinez-Cermeno*, 2025 WL 327832, at *2 (N.D. Ill. Jan. 29, 2025); *United States v. Ibarra*, 2025 WL 27474, at *3 (D. Me. Jan. 3, 2024); *United States v. Spirea*, 2024 WL 4903759, at *6 (D. Ore. Nov. 27, 2024). The concept of "flight" in the context of § 3142(f)(2)(A) refers to volitional conduct on the part of the defendant and is therefore separate and distinct from any risk of non-volitional non-appearance. *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337-38 (10th Cir. 2017).

### B.    Standard of Review of the Magistrate Judge's Order

A magistrate judge's pretrial detention order is not final until it is reviewed by the appropriate district court. *United States v. Harrison*, 396 F.3d 1280, 1281 (2d Cir. 2005). When a party moves for revocation of a pretrial detention order, the district court reviews the factual findings of the magistrate judge for clear error. *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). The ultimate legal determination is reviewed de novo by the district court. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). A district court reviewing a magistrate judge's bail determination "should not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *Leon*, 766 F.2d at 80.

### III. ARGUMENT

#### A. Regardless of whether *Terrance* is binding, the magistrate judge correctly applied *Terrance*.

The government argues that Judge Lovric erred in relying on *Terrance* (either as binding or persuasive precedent) because the facts of *Terrance* are "far away from those in this case." Dkt. No. 3-1 at 13. The government is wrong, however, to interpret Judge Lovric's reliance on *Terrance* for its *facts*. When Judge Lovric announced his reliance on *Terrance*'s "roadmap," he clearly referenced the *legal standard* articulated in that case for when a court must decide if a case involves a serious risk the defendant will flee. *See* Dkt. No. 10 at 22 ("And in [*Terrance*], Judge D'Agostino set forth a very detailed roadmap in her 20-page decision and Judge D'Agostino specifically dealt with this very specific statute, that being the (f)(2)(A) statute. And in that case, Judge D'Agostino specifically outlined what the requirements are in this particular matter that the government must establish in order to get a detention hearing scheduled. And in that decision, the district judge set forth the legal principles that the government must follow in order to establish the right to a detention hearing."). In applying the legal standard set forth in *Terrance*, Judge Lovric concluded that the facts in this case – specifically concerning Mr. Perez Vasquez's unlawful entries in the United States and the apparent strength of the case – were not sufficient to hold a detention hearing because then "every illegal reentry case would result in a detention hearing and potentially a detention order, but [§ 3142] does not say that." Dkt. No. 10 at 23.

Judge Lovric's analysis of the facts of this case did not reference or rely on the facts of *Terrance*, and nor could it. In *Terrance*, Judge D'Agostino ultimately found sufficient information in the record to justify holding a detention hearing. Specifically, *Terrance* involved a defendant who had (1) a criminal history that included offenses other than immigration violations, (2) a substance abuse problem, (3) a history of contempt of court orders, (4) a history of failing to

8

comply with probation, and (5) a facility with crossing to and from Canada on a regular basis to transport non-citizens into the United States. *Terrance*, No. 24-CR-0456 (MAD), Dkt. No. 8 at 14-16 (N.D.N.Y.). These facts are, as the government argues, "far away from those in this case," and Judge Lovric did not, and could not, rely on them in rendering his decision here. As discussed below, however, there was no error in relying on the sound legal principles articulated in *Terrance*.

      B.      ***Terrance*, upon which Judge Lovric relied in releasing the defendant, employed legally sound principles.**

The government attacks Judge Lovric's release order in this case by arguing that *Terrance* – upon which he relied – adopted legal reasoning that has been rejected by the United States Supreme Court. Dkt. No. 31- at 15. This argument is both convoluted and incorrect.

In *Terrance*, the district judge recognized the Second Circuit's decision in *Friedman* for the principle that a finding of risk of flight must be supported by "'more than evidence of the commission of a serious crime and the fact of a potentially long sentence.'" *Terrance*, No. 24-CR-0456, Dkt. No. 8 at 14 (quoting *Friedman*, 837 F.2d at 50)). *Terrance* reiterated the logic of this principle by stating that "if [a] charge alone warranted detention, Congress could have included it among the crimes for which detention is presumed[.]" *Id.* (internal quotation marks omitted). The government now contests that this logic was rejected in *Mission Prods. Holdings, Inc. v. Tempnology, LLC*, 587 U.S.C 370 (2019). Dkt. No. 3-1 at 15.

Setting aside that *Mission* is not binding *at least* because the Supreme Court was interpreting nuanced bankruptcy statutes that are not applicable to criminal law, the way the government arrived at citing to *Mission* is completely flawed. The government incorrectly attributes the defendant in *Terrance* for planting the seed for the logic allegedly rejected by *Mission*. *See* Dkt. No. 3-1 at 15 ("Office of the FPDs noted in *Terrance* that following [*Friedman*], Congress amended the Bail Reform Act to include child pornography offenses among those that

9

would automatically trigger a detention hearing under Section 3142(f)(1)."). But the defendant in *Terrance* never made this argument. Instead, the defendant cited to the fact that child pornography crimes were not listed in § 3142(f)(1) at the time *Friedman* was decided because the Second Circuit made that very same observation when deciding that the charged offense alone cannot be the basis for a finding of risk of flight. *See Terrance*, No. 24-CR-0456 (MAD), Dkt. No. 2 at 7. The defendant in *Terrance* never argued, though, that Congress was making any comment about how courts should approach bail decisions in immigration cases by adding child pornography crimes to § 3142(f)(1) after *Friedman* was decided. Moreover, despite the government's argument otherwise, *Terrance* did not analyze post-*Friedman* Congressional action and therefore never adopted the reasoning *Mission* supposedly rejects.

Both the district court in *Terrance* and Judge Lovric in this case soundly rely on *Friedman* for the proposition that a defendant's charged crime cannot, on its own, be the basis for finding that a case involves a serious risk of flight. *Friedman*, 837 F.2d at 50. But the fact is that whether reliance on this binding legal precedent was correct or not is moot because Judge Lovric rejected the government's arguments about serious risk of flight in this case for reasons other than the nature of the offense. Judge Lovric took into consideration Mr. Perez Vasquez's immigration status, his prior removals from the United States, and the strength of the government's case, and *still* found the case did not involve a serious risk of flight. Dkt. No. 10 at 23. Therefore, the government's arguments about *Terrance*'s "questionable aspects" are moot.

The government also attacks *Terrance* for defining "serious risk" consistent with district courts around the country. Dkt. No. 3-1 at 16. Citing no authority, the government contends that "serious risk" cannot be defined as "a great risk" or a "beyond average" risk of flight. *Id.* The government then declares, with no analysis, that a "great risk" is "graver than a serious risk" and

that "beyond average" risk cannot be defined. *Id.* Without any legal support, then, the government is now asking this Court to reject the countless district courts who have agreed that "serious risk" as used in § 3142(f)(2)(A) means "a great risk – beyond average – that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *See, e.g., Martinez-Cermeno*, 2025 WL 327832, at *2; *Spirea*, 2024 WL 4903759, at *6; *Ibarra*, 2025 WL 27474, at *3; *Romero-Martinez*, 2024 WL 965150, at *4; *Figueroa-Alvarez*, 2023 WL 4485312, at *5. The Court should reject this flimsy argument.

Since Congress did not assign a specific definition to the phrase "serious risk" in the Bail Reform Act, courts must apply its plain meaning. "Serious" is defined as "excessive or impression in quality, quantity, extent or degree." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/serious (last visited Mar. 28, 2025). This definition aligns with the district courts that have described "serious risk" as a "great" or "beyond average" risk. Neither *Terrance* nor any other district court has erroneously defined "serious risk" and this Court should not consider any other definition.

> **C. The magistrate judge did not hold the immigration detainer against the government.**

The government blatantly mischaracterizes Judge Lovric's view of the immigration detainer in this case. Dkt. No. 3-1 at 17-18. The government contends that Judge Lovric released the defendant in this case because he "knew that. . . [the defendant] would be held by immigration authorities" and "also . . . [he may have] believed that, as a practical matter, there was no need for him to order detention in this case – because it was unlikely that the defendant would be able to flee." *Id.* This interpretation misrepresents the magistrate judge's statements at the proceeding, and there is no evidence that Judge Lovric believed Mr. Perez Vasquez to be a flight risk that would be eliminated by immigration authorities taking him into custody.

During the initial appearance, Judge Lovric pressed AUSA Bennett to articulate what may happen to the defendant if he was taken into custody on the detainer. Dkt. No. 10 at 11-14. In doing so, the judge was underscoring that no one, including the government, knows what may happen to the defendant on the immigration detainer, so it is speculative to argue that the detainer would result in the defendant's non-appearance (for whatever reason). *Id.* Moreover, the judge explicitly rejected the government's argument that the case involves a serious risk of flight and specifically rejected all the facts the government set forth to persuade him otherwise. *Id.* at 23. It is disingenuous for the government to now misconstrue Judge Lovric's explicit findings and suggest that his words were some kind of cover for his real belief that the defendant was a flight risk that could be mitigated by immigration taking inevitable custody of him.

IV.    **CONCLUSION**

The government appeals the magistrate judge's release order because it does not like the standard it must satisfy under the Bail Reform Act in cases where it asks for detention based on serious risk of flight under § 3142(f)(2)(A). Although this standard is only preponderance of the evidence, the government is routinely having a difficult time meeting it in certain types of cases, including immigration unlawful entry and reentry cases. With this appeal, the government is asking the court to effectively eliminate the statutorily imposed burden the government faces in these types of cases. The court should reject that invitation, adopt the legal standard set forth in *Terrance*, affirm Judge Lovric's decision, and once again release Mr. Perez Vasquez from the custody of the United States Marshals.

DATED:    March 28, 2025        Respectfully submitted,

        LISA A. PEEBLES
        Federal Public Defender

By:   *Anne L. LaFex*
      Assistant Federal Public Defender
      Bar Roll No. 517311
      4 Clinton Square, 3rd Floor
      Syracuse, New York 13202

TO:    Nicholas Walters, AUSA
         Justin Bennett, AUSA